**RECORD NO. 13-1813**

## IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

M.D., a minor child;
MELODIE SHULER, as parent and next friend of M.D., a minor child,

*Plaintiffs-Appellant*s,

v.

SCHOOL BOARD OF THE CITY OF RICHMOND;
SHELETA CREWS, Individual and Official Capacities;
RAYMOND BOWSER, Individual and Official Capacities,

*Defendants-Appellees,*

GAY, LESBIAN & STRAIGHT EDUCATION NETWORK,

*Amicus Curiae.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND

### RESPONSE BRIEF OF APPELLEES

Jim H. Guynn, Jr.
Jennifer D. Royer
GUYNN, MEMMER & DILLON, P.C.
415 South College Avenue
Salem, Virginia 24153
(540) 387-2320 Telephone
(540) 389-2350 Facsimile
jim.guynn@gmdlawfirm.com
jennifer.royer@gmdlawfirm.com

*Counsel for Appellees*
*School Board of the City of Richmond;*
*Sheleta Crews and Raymond Bowser*

October 7, 2013

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>13-1813</u>          Caption: <u>M.D. v. School Board City of Richmond</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>School Board of the City of Richmond, Virginia</u>
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
          (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                          ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                ☐ YES ☑ NO
     If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _8-2-13____

Counsel for: Appellees

## CERTIFICATE OF SERVICE
***************************

I certify that on ___8/2/13_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____
(signature)

_8-2-13____
(date)

07/19/2012                                - 2 -
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1813__        Caption: __M.D. v. School Board City of Richmond__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Raymond Bowser__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                          ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                  ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _8-2-13_____

Counsel for: Appellees

## CERTIFICATE OF SERVICE
****************************

I certify that on ___8|2|13___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____                    _8-2-13_____
        (signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1813      Caption: M.D. v. School Board City of Richmond

Pursuant to FRAP 26.1 and Local Rule 26.1,

Sheleta Crews
(name of party/amicus)

who is _____ appellee _____, makes the following disclosure:
        (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent
     corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity?                                                  ☐ YES ☑ NO
     If yes, identify all such owners:

-

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _8-2-13_____

Counsel for: Appellees

## CERTIFICATE OF SERVICE
**************************

I certify that on ___8/2/13____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____
(signature)

_8-2-13_
(date)

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURES

TABLE OF AUTHORITIES ....................................................................ii

STATEMENT OF THE CASE..................................................................1

STATEMENT OF FACTS .......................................................................2

ARGUMENT SUMMARY .......................................................................7

ARGUMENT ...........................................................................................9

   I.    STANDARD OF REVIEW......................................................9

   II.   THE DISTRICT COURT PROPERLY DISMISSED M.D.'S CLAIMS AS HIS MOTHER DID NOT HAVE AUTHORITY TO LITIGATE HIS CLAIMS ON HIS BEHALF IN FEDERAL COURT ......13

   III.  THE DISTRICT COURT PROPERLY DISMISSED M.D.'S TITLE IX AND TITLE VI CLAIMS...................................................15

      A.   M.D. FAILED TO STATE A CLAIM FOR DISCRIMINATION ON THE BASIS OF SEX UNDER TITLE IX .......................................16

          1.   M.D. DID NOT PLEAD DISCRIMINATION "ON THE BASIS OF SEX".........................................................18

          2.   M.D. FAILED TO ALLEGE FACTS SUFFICIENT TO ESTABLISH THAT THE ALLEGED DISCRIMINATION WAS SEVERE, PERVASIVE, AND OBJECTIVELY OFFENSIVE ...........................................................23

          3.   M.D. DID NOT ALLEGE FACTS SUFFICIENT TO ESTABLISH THAT THE SCHOOL BOARD HAD NOTICE OF THE ALLEGED SEX DISCRIMINATION ..........26

      B.   M.D. FAILED TO ALLEGE FACTS SUFFICIENT TO ESTABLISH THAT THE PRINCIPAL AND ASSISTANT PRINCIPAL WERE "DELIBERATELY INDIFFERENT."..................28

      C.   M.D. FAILED TO ALLEGE FACTS TO ESTABLISH THAT THE SCHOOL BOARD OR INDIVIDUAL DEFENDANTS VIOLATED TITLE VI ........................................................35

      D.   TITLE VI AND TITLE IX DO NOT PROVIDE FOR PRIVATE RIGHTS OF ACTION AGAINST THE SCHOOL BOARD'S EMPLOYEES ........................................................37

IV.   M.D. DID NOT PLEAD A CAUSE OF ACTION UNDER THE FOURTEENTH AMENDMENT, AND THE DISTRICT COURT CORRECTLY DID NOT PLEAD THOSE CAUSES OF ACTION FOR HIM ..............................................................38

      A.   M.D. DID NOT PLEAD A VIOLATION OF THE FOURTEENTH AMENDMENT UNDER 42 U.S.C. § 1983 ...............39

CONCLUSION ........................................................................................44

REQUEST FOR ORAL ARGUMENT ....................................................46

CERTIFICATE OF COMPLIANCE........................................................47

CERTIFICATE OF SERVICE ................................................................48

ii

# TABLE OF AUTHORITIES

## CASES

Albright v. Oliver,
    510 U.S. 266 (1994)......................................................................40

Alexander v. Sandoval,
    532 U.S. 275 (2001)......................................................................37

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)..............................................................12, 21

Atkins v. City of Chicago,
    631 F.3d 823 (7th Cir. 2011) ....................................................16

Barnett v. Hargett,
    174 F.3d 1128 (10th Cir.1999) ..................................................38

Battlefield Builders, Inc. v. Swango,
    743 F.2d 1060 (4th Cir.1984) ....................................................10

Baynard v. Malone,
    268 F.3d 228 (4th Cir. 2001) ..............................................26, 43

Beaudett v. Hampton,
    775 F.2d 1274 (4th Cir.1985), cert. denied, 475 U.S. 1088
    (1986)............................................................................11, 12, 13

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)......................................................................21

Bracey v. Buchanan,
    55 F. Supp. 2d 416 (E.D. Va. 1999) ..........................................13

Brock v. Carroll,
    107 F.3d 241 (4th Cir.1997) ......................................................12

Brown v. Matauszak,
    415 Fed. App'x 608 (6th Cir.2011)............................................38

Canada v. Booth,
    2008 WL 1969499 (W.D. Va. May 6, 2008)...................................................42

Canton v. Harris,
    489 U.S. 378 (1989)................................................................................28

Chapman v. Reynolds,
    378 F. Supp. 1137 (W.D. Va. 1974)............................................................41

Cheung v. Youth Orchestra Foundation of Buffalo, Inc.,
    906 F.2d 59 (2d Cir. 1990) .......................................................................14

Cobin v. Hearst-Argyle Television, Inc.,
    561 F. Supp. 2d 546 (D.S.C. 2008) ............................................................11

Coleman v. Md. Court of Appeals,
    626 F.3d 187 (4th Cir. 2010) .....................................................................12

Davis v. Monroe Cnty. Board of Education,
    526 U.S. 629 (1999)..........................................................................*passim*

DeBlasio v. Johnson,
    128 F. Supp. 2d 315 (E.D. Va. 2000) aff'd sub nom, *Madison v.*
    *Johnson,* 12 F. App'x 149 (4th Cir. 2001) .....................................................41

Doe v. Claiborne County, Tenn.,
    103 F.3d 495 (6th Cir.1996) ......................................................................29

Estelle v. Gamble,
    429 U.S. 97 (1976)............................................................................11, 16

Farmer v. Brennan,
    511 U.S. 825 (1994).........................................................................29, 43

Fitzgerald v. Barnstable Sch. Committee,
    555 U.S. 246 (2009).........................................................................31, 37

Franklin v. Gwinnett County Public Schools,
    503 U.S. 60 (1992).................................................................................28

Frazier v. Fairhaven Sch. Committee,
    276 F.3d 52 (1st Cir.2002)........................................................................18

Gebser v. Lago Vista Independent Sch. District,
    524 U.S. 274 (1998)........................................................26, 28, 29

Gordon v. Leeke,
    574 F.2d 1147 (4th Cir.1978) ...............................................................12

Grayson v. Peed,
    195 F.3d 692 (4th Cir.1999), cert. denied, 529 U.S. 1067 (2000) ...............43

Haines v. Kerner,
    404 U.S. 519 (1972)........................................................................11

Harksen v. Garratt,
    29 F. Supp. 2d 265 (E.D. Va. 1998) ............................................................16

Harrison v. Prince William Cnty. Police Department,
    640 F. Supp. 2d 688 (E.D. Va. 2009) ........................................................40, 42

Harrison v. United States Postal Serv.,
    840 F.2d 1149 (4th Cir.1988) ...............................................................11

Hishon v. King & Spalding,
    467 U.S. 69 (1984)........................................................................10, 15

Hobson v. Wilson,
    737 F.2d 1 (D.C. Cir. 1984)........................................................................12

Hughes v. Rowe,
    449 U.S. 5 (1980)........................................................................11

Iannaccone v. Law,
    142 F.3d 553 (2d Cir. 1998) ...............................................................14

Jennings v. University of N. Carolina,
    482 F.3d 686 (4th Cir. 2007) ...............................................................19, 22

Johnson v. BAC Home Loans Servicing, LP,
     867 F. Supp. 2d 766 (E.D. N.C. 2011) ........................................................11

Johnson v. Knowles,
     113 F.3d 1114 (9th Cir.), cert. denied, 522 U.S. 996 (1997) ......................39

Johnson v. Pearson,
     316 F. Supp. 2d 307 (E.D. Va. 2004) ..........................................................11

Jones v. Dole Food Co., Inc.,
     827 F. Supp. 2d 532 (W.D. N.C. 2011) aff'd, 473 F. App'x 270
     (4th Cir. 2012) ..............................................................................................12

Jones v. Link,
     493 F. Supp. 2d 765 (E.D. Va. 2007) ..........................................................10

Jones v. Wellham,
     104 F.3d 620 (4th Cir.1997) .........................................................................43

Laber v. Harvey,
     438 F.3d 404 (4th Cir. 2006) ........................................................................39

Labram v. Havel,
     43 F.3d 918 (4th Cir.1995) .....................................................................10, 21

Levarge v. Preston Board of Education,
     552 F. Supp. 2d 248 (D. Conn. 2008) ..........................................................20

Loe v. Armistead,
     582 F.2d 1291 (4th Cir.1978) .......................................................................11

Machadio v. Apfel,
     276 F.3d 103 (2d Cir. 2002) .........................................................................14

McCleskey v. Kemp,
     481 U.S. 279 (1987).......................................................................................41

Meritor Savings Bank, FSB v. Vinson,
     477 U.S. 57 (1986).........................................................................................19

Morrison v. Garraghty,
    239 F.3d 648 (4th Cir.2001) ...................................................40, 41

Myers v. Loudoun Cnty. Public Sch.,
    418 F.3d 395 (4th Cir. 2005) .................................................13, 14

Neitzke v. Williams,
    490 U.S. 319 (1989).............................................................10, 15

New Jersey v. T.L.O.,
    469 U.S. 325 (1985).................................................................30

Nordlinger v. Hahn,
    505 U.S. 1 (1992)) ...................................................................41

Ocheltree v. Scollon Products, Inc.,
    335 F.3d 325 (4th Cir. 2003) ...................................................19

Oncale v. Sundowner Offshore Services, Inc.,
    523 U.S. 75 (1998).................................................................22

Oxendine v. Williams,
    509 F.2d 1405 (4th Cir. 1975) .................................................13

Patterson v. Hudson Area Schools,
    724 F. Supp. 2d 682 (E.D. Mich. 2010) ...............................20, 21

Payne v. Sec'y of Treas.,
    73 Fed. App'x 836 (6th Cir.2003).............................................38

Pinckney v. Ozmint,
    490 F. Supp. 2d 670 (D.S.C. 2007) ..........................................12

Preston v. Hilton Central Sch. District,
    876 F. Supp. 2d 235 (W.D. N.Y. 2012).....................................20

Rice v. National Sec. Council,
    244 F. Supp. 2d 594 (D.S.C. 2001) aff'd sub nom, Rice v. Mills,
    46 F. App'x 212 (4th Cir. 2002) ..............................................38

Sanches v. Carrollton-Farmers Branch Independent Sch. District,
    647 F.3d 156 (5th Cir. 2011) .........................................................................18

Schaefer v. Las Cruces Public Sch. District,
    716 F. Supp. 2d 1052 (D.N.M. 2010)...........................................................40

Schatz v. Rosenberg,
    943 F.2d 485 (4th Cir. 1991) ........................................................................10

Shaw v. Martin,
    733 F.2d 304 (4th Cir.1984) .........................................................................41

Silveira v. Lockyer,
    312 F.3d 1052 (9th Cir.2002), cert. denied, 540 U.S. 1046 (2003) ........40, 41

Small v. Endicott,
    998 F.2d 411 (7th Cir.1993) ....................................................................12, 38

Spearman v. Ford Motor Co.,
    231 F.3d 1080 (7th Cir. 2000) ......................................................................19

Spielman v. Hildebrand,
    873 F.2d 1377 (10th Cir.1989) .....................................................................40

Sumner v. Tucker,
    9 F. Supp. 2d 641 (E.D. Va. 1998) ..............................................................10

Tindall v. Poultney High Sch. District,
    414 F.3d 281 (2d Cir. 2005) ....................................................................13, 14

United States v. Charleston Cnty.,
    316 F. Supp. 2d 268 (D.S.C. 2003) aff'd sub nom, United States v.
    Charleston Cnty., S.C., 365 F.3d 341 (4th Cir. 2004)...................................41

United States v. Wilson,
    699 F.3d 789 (4th Cir. 2012), cert. denied, 133 S. Ct. 2401, 185 L. Ed.
    2d 1112 (U.S. 2013)......................................................................................12

Village of Arlington Heights v. Metropolitan   Housing Development Corp.,
    429 U.S. 252 (1977)................................................................................41, 42

Village of Willowbrook v. Olech,
    528 U.S. 562 (2000)................................................................40

Weller v. Dep't of Social Servs.,
    901 F.2d 387 (4th Cir.1990)  ............................................11, 12

Wenger v. Canastota Central Sch. District,
    146 F.3d 123 (2d Cir. 1998), cert. denied, 526 U.S. 1025, 119 S.Ct.
    1267, 143 L.Ed.2d 363 (1999)............................................14, 15

West v. Atkins,
    487 U.S. 42 (1988)................................................................39

White v. White,
    886 F.2d 721 (4th Cir. 1989) ..............................................10, 12

Wolfe v. Fayetteville, Arkansas Sch. District,
    648 F.3d 860 (8th Cir. 2011) ...................................................19

Young Bok Song v. Gipson,
    423 Fed. App'x 506 (6th Cir.2011)...........................................39

Zeno v. Pine Plains Central Sch. District,
    702 F.3d 655 (2d Cir. 2012) ........................................28, 35, 36

## STATUTES AND REGULATIONS

20 U.S.C. § 1681 ....................................................................1
20 U.S.C. § 1681(a) ...............................................................19
28 U.S.C. § 1654....................................................................14
28 U.S.C. § 1915(e) .................................................................1
28 U.S.C. § 1915(e)(2)(B)(ii) ..............................................1, 9, 15, 44
42 U.S.C. § 1983........................................................28, 38, 39, 44
42 U.S.C. § 2000d..................................................................35
34 C.F.R. § 100.13(i) (2000)....................................................35

## CONSTITUTION

U.S. Const. amend. XIV, § 1 ..................................................................40

## RULES

Fed. R. Civ. P. 8(a)(2)........................................................................21

Fed. R. Civ. P. 12(b)(6)................................................................10, 15

Fed. R. Civ. P. 60(b) ............................................................................2

## STATEMENT OF THE CASE

M.D., by his mother and next friend, filed the underlying action, *pro se*, pursuant to Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 ("Title IX"), and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"). M.D. moved to proceed *in forma pauperis*, triggering the district court's review of the merits of the Complaint under 28 U.S.C. §1915(e). The district court determined that the Complaint failed to state a claim upon which relief could be granted and dismissed the action pursuant to 28 U.S.C. §1915(e)(2)(B)(ii). M.D. alleged sex and race discrimination because a fellow student called him "gay," "nigger," and a "little monkey" while on school property. M.D. also alleged state law claims.

The district court held that M.D. failed to allege a claim for sex discrimination under Title IX as the claim was based upon M.D.'s perceived sexual orientation, which is not actionable under Title IX. The district court also held that M.D. failed to allege sufficient facts to support a finding of deliberate indifference by the School Board, which is a necessary element of claims under Title VI and Title IX. Finally, the district court dismissed the claims against the individuals because Title VI and Title IX only provide for causes of action against institutions receiving federal funds, and therefore, neither Title VI nor Title IX provide private rights of action against individual employees. Having dismissed the federal

claims, the district court declined to exercise its supplemental jurisdiction over the state law claims.

M.D. filed a motion for reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure, and the district court denied the motion.

M.D. then filed the instant appeal, which seeks to create new law in this Circuit by asking this Court to decide for the first time that sexual orientation discrimination, or perceived sexual orientation discrimination, is a form of sex stereotyping prohibited under Title IX.

## STATEMENT OF FACTS

Six-year-old M.D. was a student at Summer Hill Elementary School in Richmond, Virginia, from January 8, 2013, until his mother withdrew him from school on April 15, 2013.  JA 4 (¶ 5), JA 8 (¶ 34). Prior to attending Summer Hill Elementary, M.D. had attended four other public schools.  JA 20 (prayer for relief). M.D. alleges that he was "subjected to persistent bullying and harassment" on the basis of "his race and perceived sexual orientation."  JA 5 (¶ 9).

M.D. alleges that a Hispanic male[1] called him racial epithets and profane names, including "nigger," "bitch," and "motherfucker."  JA 5 (¶10).  On April 3, 2013, the Hispanic male called M.D. "nigger" and M.D.'s father informed the Hispanic male's mother.  JA 9- 10 (¶ 49).  The Hispanic male's mother "disciplined

---

[1] M.D. only identifies the offending student by his race and gender throughout his Complaint.

2

him in front to [sic] the plaintiff and plaintiff's father by hitting" her son. Id. On April 10, 2013, the Hispanic male called M.D. his "little monkey." JA 5 (¶ 11).

M.D. complains that he was called "gay" and his mother concludes that it was based upon "perceived notions that an intelligent boy who is not aggressive, does not want to fight and have [sic] interest [sic] beyond the mental capacity of most children does not have the qualities of a normal boy." JA 5 (¶ 12). M.D. alleges that he suffered from sex discrimination under Title IX because he was "routinely called names by other students because he did not conform to masculine stereotypes and because of his sex." JA 15 (¶ 83). Specifically, he was called "gay." JA 15 (¶ 84). M.D. did not allege any facts related to any particular sex stereotypes or how he met or did not meet those stereotypes. M.D. did not allege how being called "gay" related to his sex. M.D. did not allege any sexual conduct attributable to the offending student or the use of any sexual language by the offending student.

M.D. also alleges, generally, "verbal abuse, stalking, physical assault, theft of property, and taunting." JA 12 (¶ 73). M.D. does not allege any actual acts of stalking, physical assault, theft of property, or facts to substantiate his claims.

M.D. alleges that his mother went to school "from February of 2013 to April of 2013" to "address the concerns of the minor child being subjected to repeatedly [sic] bullying." JA 6 (¶ 18). M.D. notes that on March 29, 2013, his mother asked

the Assistant Principal to punish the children[2] bullying him, and that M.D.'s mother was informed that the Assistant Principal "could only punish the children within the limits of the authority given to him and that he did so and he could not control the children." JA 6 (¶19). M.D.'s mother told the Assistant Principal that "the plaintiff was called a 'nigger' and that she was [sic] wanted the child to be disciplined and that merely speaking with the child was not in her opinion sufficient punishment." JA 10 (¶50).

M.D. does not allege that he informed the school administration of any acts of sex discrimination.

M.D. alleges that his mother called the school from March to April of 2013, requesting the school's bullying policy and was told by the Assistant Principal that he did not have a copy of the requested information. JA 6 (¶ 21). Specifically, M.D.'s mother wanted copies of "policies of [sic] procedures for discipline of children for bullying," which was provided to her by Principal Crews on April 15, 2013. JA 6 (¶ 22).

---

[2] Although M.D. uses the term "children" to identify the alleged harassing student from time to time, in his Complaint, he only identifies one particular student, to whom he refers as a "Hispanic male" as his harasser. Although the Complaint alleges that the "Hispanic male" harassed him in front of other students, M.D. does not indicate that the other students are joining in harassing him. There are no facts alleged in the Complaint to indicate a systemic problem of harassment, and the harassment appears to be limited to offensive language used by one child.

4

On April 11, 2013, M.D.'s mother called unspecified school officials and "stated that she was disappointed that the Plaintiff was subjected to repeated bullying and harassment at Summer Hill elementary school and that [sic] was done other than merely speaking with the children and that speaking with the children was not considered doing any [sic] at all to the Plaintiff's mother."  JA 7 (¶ 25).  M.D. alleges that Principal Crews told his mother that she would speak to the Hispanic male about the bullying "on or about April 11, 2013," and that because the students were testing on April 10, 2013 (when M.D. alleges that his parents spoke with Principal Crews), she would "deal with the issue later that day."  JA 7 (¶¶ 29-30).

M.D. complains that neither the Assistant Principal nor the Principal did anything in response to his mother's complaints from March 29, 2013, through April 10, 2013.  JA 7 (¶ 31).  Spring break began after classes ended on March 29, 2013.  JA 10 (¶55).  Classes resumed on April 8, 2013.  JA 10-11 (¶ 56).

M.D. complains that the Assistant Principal "did not discipline the male, Hispanic child other than speaking with him."  JA 11 (¶ 59).  M.D. thinks the appropriate punishment "range[s] from detention to suspension from school for 10 days."  JA 14 (¶ 80).

M.D. complains that the Principal did not speak with him to identify the offending student on April 11, 2013 (the offending student had already been

identified to the Principal by M.D.'s parents on April 11, 2013). JA 11 (¶¶ 60, 62-64). M.D. was absent from school on April 12, 2013 (a Friday). JA 11 (¶ 65). M.D. withdrew from school on April 15, 2013 (the following Monday). JA 8 (¶34).

On April 15, 2013, M.D.'s mother spoke with the School Board's "bullying specialist," who advised her that the principal would contact her to discuss a bullying prevention plan. JA 12 (¶ 66). M.D. complains that the Principal did not call her to discuss a bullying prevention plan after M.D.'s mother withdrew him from school on April 15, 2013. JA 12 (¶¶ 66-67).

M.D. was transferred by the School Board's pupil placement office to another elementary school, which he began attending on April 29, 2013. JA 12 (¶ 71).

 M.D.'s mother complains that a School Board representative would only communicate with her by email and not by telephone. JA 12 (¶ 68). M.D.'s mother complains that the School Board did not return her calls "from on about March 28, 2013 through April 12, 2013." JA 12 (¶ 69).[3]

M.D. alleges that "the school is deliberately indifferent to the harassment and failed to investigate and follow up on some of the alleged bullying and harassment and the mere speaking with the children they choose [sic] to investigate

---

[3] This time period included spring break, which began on March 29, 2013, and concluded April 8, 2013.

and follow up did nothing to stop the bullying and harassment." JA 13 (¶ 74). M.D. also alleges that "the City of Richmond employees have known for over five years that the students at Summer Hill elementary were subjected to illegal bullying due to the rise in the Hispanic enrollment." JA 13 (¶ 76).

M.D. alleges that he complained of being sick at school for weeks even though he was fine at home, and points to one day that he asked to be home schooled (April 13, 2013) and one day that he asked to stay home from school because he was too sick to go to school (April 15, 2013). JA 5 (¶¶ 14-16).

## ARGUMENT SUMMARY

M.D. seeks to create new law in this Circuit by encouraging this Court to hold for the first time that purported sexual orientation discrimination is a form of sex stereotyping that violates Title IX. This Court, however, may determine that the district court's dismissal of M.D.'s Complaint was proper without reaching the issue of whether purported sexual orientation or perceived sexual orientation discrimination violates Title IX.

M.D. alleged that he was subject to discrimination in violation of Title IX (sex) and Title VI (race) when a fellow student said that he was "gay" and called him a "nigger" and a "little monkey." The facts in his Complaint do not support a Title IX or a Title VI claim.

7

With respect to the Title IX sex discrimination claim, M.D. alleges that another student called him "gay" which constituted sex discrimination based on perceived sexual orientation. But calling someone "gay" does not, by itself, constitute sex discrimination, sexual orientation discrimination, perceived sexual orientation discrimination, or sex stereotyping. Moreover, Title IX is not violated on the basis of sexual orientation or perceived sexual orientation discrimination. To the extent that the conduct can be considered sex stereotyping and that it constitutes prohibited sex discrimination under Title IX, the conduct alleged was not severe, pervasive, or objectively offensive, and it did not systemically deny M.D. access to the educational benefits of the school. Moreover, M.D. failed to allege facts showing that he ever notified any school personnel of this purported sex discrimination, which is necessary to impute liability to the School Board for a Title IX violation.

Title VI follows a similar analysis as Title IX, and M.D. failed to allege sufficient facts to demonstrate that the harassing conduct of being called "nigger" and a "little monkey" was severe and pervasive such that it systemically denied him access to the educational benefits of the school.

In addition to failing to allege facts to support the contention that the harassment was severe and pervasive, M.D. failed to allege sufficient facts to demonstrate that school personnel were deliberately indifferent to the harassment,

which is necessary to impose liability on the School Board for either a Title IX claim or a Title VI claim. Instead of deliberate indifference, M.D.'s allegations demonstrated that the conduct of the Principal and Assistant Principal in responding to M.D.'s complaints was not unreasonable given the information provided to them. The district court correctly dismissed the Title IX and Title VI claims.

Neither Title IX nor Title VI provide for private rights of actions against the School Board's employees, so the district court properly dismissed complaints against Principal Sheleta Crews and Assistant Principal Raymond Bowser.

Finally, M.D.'s complaint does not allege a Fourteenth Amendment equal protection violation and, as such, the district court did not err in refusing to plead such causes of action for M.D.

## ARGUMENT

### I. STANDARD OF REVIEW

M.D. filed a motion seeking *in forma pauperis* status, which triggered the district court's review of his pleadings under 28 U.S.C. § 1915(e)(2)(B)(ii). Section 1915(e)(2)(B)(ii) provides that a district court may dismiss a case at any time if the case fails to state a claim upon which relief may be granted. Whether a complaint states a claim upon which relief can be granted, for purposes of the *in forma pauperis* statute, is determined by the familiar standard for a motion to

dismiss for failure to state a claim.    Sumner v. Tucker, 9 F.Supp. 2d 641, 642 (E.D. Va. 1998); Jones v. Link, 493 F.Supp. 2d 765 (E.D. Va. 2007).  Appellate courts review dismissals for failure to state a claim *de novo*.  Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991).

Rule 12(b)(6) allows a court to dismiss claims based on dispositive issues of law.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  A Rule 12(b)(6) motion should be granted "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Neitzke v. Williams, 490 U.S. 319, 327 (1989) (quoting Hishon, 467 U.S. at 73). In evaluating a complaint, the court "will construe the factual allegations 'in the light most favorable to the plaintiff.'" Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir.1991) (quoting Battlefield Builders, Inc. v. Swango, 743 F.2d 1060, 1062 (4th Cir.1984)).  The court, however, is not bound to accept as true "conclusory allegations regarding the legal effect of the facts alleged." Labram v. Havel, 43 F.3d 918, 921 (4th Cir.1995). The court need not look beyond the complaint's allegations in making such a determination.  White v. White, 886 F.2d 721, 722 (4th Cir. 1989).

When testing the sufficiency of a civil rights complaint, courts "must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under

any legal theory which might plausibly be suggested by the facts alleged." Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir.1988) (internal quotation marks omitted).

Pro se pleadings are accorded liberal construction. Estelle v. Gamble, 429 U.S. 97, (1976); Haines v. Kerner, 404 U.S. 519 (1972); Loe v. Armistead, 582 F.2d 1291 (4th Cir.1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  Hughes v. Rowe, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. Cobin v. Hearst-Argyle Television, Inc., 561 F. Supp. 2d 546, 549 (D.S.C. 2008).  The liberal construction applied to a pro se plaintiff's complaint has its limits. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985); Johnson v. Pearson, 316 F.Supp.2d 307, 313–14 (E.D. Va. 2004).

The court is not required to accept a pro se plaintiff's conclusions of law as true and cannot ignore a clear failure to allege facts which set forth a claim cognizable in federal district court.  Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766 (E.D. N.C. 2011); Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir.1990) ("[T]he requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.").  Civil rights plaintiffs must

allege facts with specificity to support their claims. <u>White v. White</u>, 886 F.2d 721, 724 (4th Cir. 1989)(citing <u>Hobson v. Wilson</u>, 737 F.2d 1, 29-30 & n. 87 (D.C. Cir. 1984) (reviewing cases from each circuit)).    The factual allegations in the complaint must create more than a mere possibility of misconduct.  <u>Coleman v. Md. Court of Appeals</u>, 626 F.3d 187, 190 (4th Cir. 2010) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009)).

A district court may not construct the legal arguments for the *pro se* plaintiff.  <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir.1993); <u>Pinckney v. Ozmint</u>, 490 F. Supp. 2d 670 (D.S.C. 2007).  "The 'special judicial solicitude' with which a district court should view ... *pro se* [filings] does not transform the court into an advocate," which is what M.D. is seeking of this Court in asking the Court to rewrite his pleading.  <u>United States v. Wilson</u>, 699 F.3d 789, 797 (4th Cir. 2012), cert. denied, 133 S. Ct. 2401, 185 L. Ed. 2d 1112 (U.S. 2013) (quoting  <u>Weller v. Dep't of Social Servs.</u>, 901 F.2d 387, 391 (4th Cir.1990)); <u>see</u> <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir.1978) (recognizing that district courts are not expected to assume the role of advocate for the *pro se* plaintiff).  <u>See</u> <u>also</u> <u>Brock v. Carroll</u>, 107 F.3d 241, 243 (4th Cir.1997); <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir.1985); <u>Jones v. Dole Food Co., Inc.</u>, 827 F. Supp. 2d 532, 536 (W.D. N.C. 2011) aff'd, 473 F. App'x 270 (4th Cir. 2012)("While district courts

must liberally construe *pro se* complaints, courts cannot act as the *pro se* plaintiff's advocate.")

The Court also does not develop tangential claims when the essence of the complaint concerns another issue.  Beaudett v. Hampton, 775 F.2d 1274, 1278 (4th Cir.1985), *cert. denied,* 475 U.S. 1088 (1986).  Nor should a court "conjure up questions never squarely presented." Id. at 1278; see also Bracey v. Buchanan, 55 F.Supp.2d 416, 421 (E.D. Va. 1999).

## II.  THE DISTRICT COURT PROPERLY DISMISSED M.D.'S CLAIMS AS HIS MOTHER DID NOT HAVE AUTHORITY TO LITIGATE HIS CLAIMS ON HIS BEHALF IN FEDERAL COURT.

M.D.'s mother, Melodie Shuler, does not have the authority to pursue *pro se* litigation on behalf of M.D.  This Circuit has held that *pro se*, non-attorney parents "generally may not litigate the claims of their minor children in federal court." Myers v. Loudoun Cnty. Pub. Sch., 418 F.3d 395, 399 (4th Cir. 2005).  "An individual unquestionably has the right to litigate his own claims in federal court," but this right to self-representation "does not create a coordinate right to litigate for others." Id. at 400 (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975)).  This rule "ensures the children's interests are not prejudiced by their well-meaning, but legally untrained parents." Id. at 401.

"The choice to appear *pro se* is not a true choice for minors, who under state law cannot determine their own legal actions."   Tindall v. Poultney High Sch.

13

Dist., 414 F.3d 281, 284-85 (2d Cir. 2005)(quoting Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990)(holding that a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child in federal court)); Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123, 124–25 (2d Cir. 1998) (per curiam) (same), cert. denied, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 363 (1999).  Although "[l]itigants in federal court have a statutory right to choose to act as their own counsel," Machadio v. Apfel, 276 F.3d 103, 106 (2d Cir. 2002) (citing 28 U.S.C. § 1654), "an individual who is not licensed as an attorney 'may not appear on another person's behalf in the other's cause,' " id. (quoting Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998)).  The rule protects the legal interests of the minor and recognizes the impropriety of a person who is not a member of the bar representing another person in court proceedings. Tindall, 414 F.3d at 284-85; see Cheung, 906 F.2d at 61 ("[I]t is not in the interests of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected.")

Although the district court did not raise this issue below, this Court may determine that the district court had the right to dismiss the Complaint in order to protect M.D.'s interests.  See Myers, 418 F.3d at 399 (finding that the appellate court had the right to raise the issue of the appropriateness of permitting the *pro se*

14

parent to litigate on behalf of his minor child *sua sponte* for the first time on appeal); Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123, 125 (2d Cir. 1998)(holding that an appellate court has an obligation *sua sponte* to inquire into whether pro se parent had authority to litigate claims on behalf of his minor children).

Because Melodie Schuler is not authorized to bring suit on behalf of M.D. without legal representation,[4] M.D.'s claims are subject to dismissal on this independent basis.

## III.  THE DISTRICT COURT PROPERLY DISMISSED M.D.'S TITLE IX AND TITLE VI CLAIMS.

The facts alleged by M.D. demonstrate that he could not prevail on a claim of sex discrimination or race discrimination under Title IX or Title VI, respectively; therefore, the district court's dismissal of his Complaint was proper. Dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) is proper if it meets the standard for dismissals governing motions under Rule 12(b)(6), i.e., "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Neitzke v. Williams, 490 U.S. 319, 327 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

---

[4] Melodie Schuler did not indicate that she was an attorney on the face of the pleading filed with the district court, which would reasonably lead the district court to presume that she was not an attorney.  If Ms. Schuler had proceeded to represent her son as an attorney, M.D.'s complaint would not be entitled to the deference given to the pleadings of *pro se* litigants.

### A.   M.D. FAILED TO STATE A CLAIM FOR DISCRIMINATION ON THE BASIS OF SEX UNDER TITLE IX.

A *pro se* complaint may be dismissed where the complaint contains a detailed description of underlying facts which fail to state a viable claim. Estelle v. Gamble, 429 U.S. 97, 106–09 (1976); Harksen v. Garratt, 29 F. Supp. 2d 265, 270 (E.D. Va. 1998). Indeed, a plaintiff may plead himself out of court. Atkins v. City of Chicago, 631 F.3d 823, 832 (7th Cir. 2011). Under the facts of this case, M.D.'s detailed set of facts not only fails to state a viable claim for sex discrimination in violation of Title IX, but the facts alleged also demonstrate why the claim fails as a matter of law.

In Davis v. Montgomery County Board of Education, the United States Supreme Court considered whether a private damages action may lie against a school board in cases of student-on-student sexual harassment. 526 U.S. 629, 633 (1999). The Supreme Court held that it may, but only where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities, and further held that such an action will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit. Id.

In Davis, the sexual harassment complained of included six months of acts of sexual aggression by a male fifth grade student against a female fifth grade classmate, including the male student's attempts to touch the female student's

16

breasts and genital area and his vulgar statements such as "I want to get in bed with you" and "I want to feel your boobs." Id. at 633. Further, the male student placed a door stop in his pants and proceeded to act in a sexually suggestive manner toward the female student during physical education class. Id. at 634. At one point, the male student rubbed his body against the female student in the school hallway in what she considered a sexually suggestive manner. Id. The harassment ended approximately six months after it began when the male student was charged with, and pled guilty to, sexual battery. Id.

During this six month period, the female student complained to her teachers at the time the incident occurred, and she complained to her mother, who in turn, complained to the teachers and the principal. Despite the repeated complaints, neither the teachers, nor the principal, nor the school board took any corrective action.

Moreover, the female student in Davis was not the only victim of the male student's behavior. At one point a group of female students attempted to complain to the principal about the male student's behavior and were denied access to the principal by their teacher. Id. at 635.

Under the facts alleged in Davis, the Supreme Court held that plaintiff had alleged a case for sex discrimination under Title IX. The facts alleged by M.D. related to purported peer-on-peer harassment do not rise to the level of conduct

17

found to be discriminatory in <u>Davis</u>.  In particular, M.D. failed to allege discrimination on the basis of sex; he failed to allege harassment that was severe, pervasive, and objectively offensive; he failed to allege facts that establish that school personnel were deliberately indifferent; and he failed to allege that the School Board was notified of his sex discrimination claim.

## 1.    M.D. DID NOT PLEAD DISCRIMINATION "ON THE BASIS OF SEX".

M.D. is seeking to extend the reach of Title IX to include claims of sexual orientation or perceived sexual orientation discrimination under the umbrella of sex stereotype discrimination.  Based upon the district court's decision and the procedural posture of this case, the issue is not appropriate for this Court to entertain at this time.  There is no precedent in this Circuit that would permit the district court to read Title IX's provisions so broadly as to include sexual orientation discrimination under the facts of this case, and the district court's refusal to do so was warranted in this case.

A Title IX claim is only cognizable if there is evidence that the offender acted because of the victim's sex.  <u>See</u>, <u>e.g.</u>, <u>Frazier v. Fairhaven Sch. Comm.</u>, 276 F.3d 52, 66 (1st Cir.2002)("Discrimination on the basis of sex is the *sine qua non* of a Title IX sexual harassment case, and a failure to plead that element is fatal."); <u>Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.</u>, 647 F.3d 156 (5th Cir. 2011)("Same-sex sexual harassment is actionable under title IX. The offensive

behavior must, however, be based on sex, per the words of Title IX, and not merely tinged with offensive sexual connotations."); Wolfe v. Fayetteville, Arkansas Sch. Dist., 648 F.3d 860, 865 (8th Cir. 2011)("Title IX imposes liability on a school district for discrimination only if the discrimination is 'on the basis of sex.' We glean from this language of the statute a requirement of underlying intent, and therefore motivation, on the part of the actor to discriminate because of one's sex or gender.")

As a preliminary matter, M.D. has not pled a cause of action for discrimination on the basis of sex or sex stereotyping. M.D. must allege facts showing that the Hispanic male student subjected him to harassment based on his sex. See 20 U.S.C. § 1681(a). Sexual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); Jennings v. Univ. of N. Carolina, 482 F.3d 686, 695 (4th Cir. 2007); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331–32 (4th Cir. 2003).

M.D. has pled that he was called "gay," which his mother concludes is based upon the harassing student's incorrect perception of M.D.'s sexual orientation. Sexual orientation discrimination is not sex discrimination as defined under Title IX. See Spearman v. Ford Motor Co., 231 F.3d 1080, 1084 (7th Cir. 2000).

Moreover, use of the word "gay" among school children, particularly among six year olds, does not necessarily involve a reference to sex.  See Preston v. Hilton Cent. Sch. Dist., 876 F. Supp. 2d 235, 243 (W.D. N.Y. 2012)(anti-homosexual pejoratives such as "homo" and "faggot," without allegations of anti-male verbiage or over sexually harassing conduct, do not necessarily indicate someone is targeted because of his male gender);  Patterson v. Hudson Area Schools, 724 F. Supp. 2d 682 (E.D. Mich. 2010)(use of the terms "gay," "fag," and "queer" does not necessarily implicate sex); Levarge v. Preston Bd. of Educ., 552 F. Supp. 2d 248, 251 (D. Conn. 2008)(use of term "gay" to describe nine-year-old student who told another male student that he loved him, homophobic teasing, and throwing of food at student was not sex discrimination in violation of Title IX).

In Patterson v. Hudson Area Schools, a case in which plaintiff alleged a sex stereotyping claim on the basis that he did not conform to the stereotypical male, the district court refused to find a claim for sex discrimination under Title IX under circumstances in which a male student was called "gay," "fag," and "queer," among other names, by other students from sixth grade through ninth grade.  724 F. Supp. 2d 682 (E.D. Mich. 2010).  The evidence introduced at trial included testimony of teachers, who testified that school-aged children often use words such words as "gay," "fag," and "queer" without understanding their meanings or that those words can be hurtful.  Id. at 692.  School-aged children often use those words as

20

part of their vernacular to describe a variety of things or people, in a nonsexual manner. Id.

M.D. asserts that he has pled a sex stereotyping claim as he concludes without any factual support that the child who called him "gay" did so because M.D. did not meet the mold of what an African American boy should be – "based on perceived notions that an intelligent boy who is not aggressive, does not want to fight and have interest beyond the mental capacity of most children does not have the qualities of a normal boy." JA 15 (¶ 84). M.D.'s allegations are conclusory in nature, and they have no support in the facts that are pled. The district court in ruling on the sufficiency of the M.D.'s Complaint is not bound to accept as true "conclusory allegations regarding the legal effect of the facts alleged." Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995). Moreover, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." Ashcroft v. Iqbal, 556 U.S. at 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)). "[P]leadings that ... are no more than conclusions [ ] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n. 3 ("Rule 8(a)(2) still requires a 'showing,'

21

rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.")

Because a cause of action for discrimination based upon sex stereotyping was not actually pled, this Court need not address this issue. Nevertheless, to the extent that this Court may otherwise determine that M.D.'s conclusory statements are factual allegations, the law does not support a finding that discrimination on the basis of sex stereotyping occurred in this case.

Whether sex-oriented conduct rises to the level of actionable harassment depends on a constellation of surrounding circumstances, expectations, and relationships," including, but not limited to, the ages of the harasser and the victim and the number of individuals involved. Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. at 651-52 (1999) (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 82 (1998)).

Courts examine all the circumstances, including the positions and ages of the harasser and victim, whether the harassment was frequent, severe, humiliating, or physically threatening, and whether it effectively deprived the victim of educational opportunities or benefits. Jennings v. Univ. of N. Carolina, 482 F.3d 686, 696 (4th Cir. 2007).

In <u>Davis</u>, the Supreme Court admonished district courts to "bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults," stating

> [A]t least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. *Damages are not available for simple acts of teasing and name-calling among school children, however, <u>even where these comments target differences in gender</u>.*

<u>Id</u>. (emphasis added). It is not enough to show that a student has been "teased" or "called ... offensive names." <u>Id</u>. at 652. Under the facts of this case, the only harassing conduct alleged is calling M.D. "gay." No sexually charged language was used, and no sexual conduct occurred. Allegations of verbal teasing or being called offensive names without more do not rise to the level of sex-based discrimination under Title IX.

## 2. M.D. FAILED TO ALLEGE FACTS SUFFICIENT TO ESTABLISH THAT THE ALLEGED DISCRIMINATION WAS SEVERE, PERVASIVE, AND OBJECTIVELY OFFENSIVE.

A plaintiff must establish sex based discrimination that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victim's educational experience, that the victim-students are effectively denied

equal access to an institution's resources and opportunities.  <u>Davis v. Monroe Cnty.</u>

<u>Bd. of Educ.</u>, 526 U.S. at 651 (1999).

The behavior must be serious enough to have the systemic effect of denying

the victim equal access to an educational program or activity.  <u>Id</u>.  In articulating

what could constitute severe, pervasive, and objectively offensive peer-on-peer

harassment, the Supreme Court stated,

> Although, in theory, a single instance of sufficiently
> severe one-on-one peer harassment could be said to have
> such an effect, we think it unlikely that Congress would
> have thought such behavior sufficient to rise to this level
> in light of the inevitability of student misconduct and the
> amount of litigation that would be invited by entertaining
> claims of official indifference to a single instance of one-
> on-one peer harassment. By limiting private damages
> actions to cases having a systemic effect on educational
> programs or activities, we reconcile the general principle
> that Title IX prohibits official indifference to known peer
> sexual harassment with the practical realities of
> responding to student behavior, realities that Congress
> could not have meant to be ignored.

<u>Id</u>. at 652-53 (1999).

In comparing the difference between teacher on student harassment and

student on student harassment, the Supreme Court found that the relationship

between the harasser and the victim necessarily affects the extent to which the

misconduct can be said to breach Title IX's guarantee of equal access to

educational benefits and to have a systemic effect on a program or activity. Peer

harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment.  Id. at 653.

Unlike the conduct in this case, in Davis, the harassing student's misconduct was severe, pervasive, and objectively offensive. The harassment was not only verbal; it included numerous acts of objectively offensive touching, and the student ultimately pled guilty to criminal sexual misconduct. Moreover, multiple victims were similarly impacted by the student's sexual misconduct such that they collectively sought an audience with the school principal, which was denied by their teacher.  The only act complained of in this case, which does not constitute an act of sex discrimination, is calling M.D. "gay," which M.D.'s mother attributes to a perception of M.D.'s sexual orientation and her factually unsupported characterization of his disposition.

As the Supreme Court stated in Davis, simple acts of name-calling by school aged children are not sufficient to demonstrate severe, pervasive, and objectively offensive harassment – even when the name-calling "targets differences in gender." Davis, 526 U.S. at 51.  The district court's dismissal of the Title IX claim on this basis, therefore, was proper.

3.   **M.D. DID NOT ALLEGE FACTS SUFFICIENT TO ESTABLISH THAT THE SCHOOL BOARD HAD NOTICE OF THE ALLEGED SEX DISCRIMINATION.**

Title IX conditions an offer of federal education funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the government and the recipient of the funds. Baynard v. Malone, 268 F.3d 228, 237 (4th Cir. 2001)(citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998)).  The contractual nature of Title IX requires that a funding recipient have notice that it may be liable for a monetary award, i.e., it must actually be aware of the discrimination on the basis of sex, and fail to remedy it.  In other words, a school district may be liable under Title IX only for its own misconduct, and Title IX's implied damages remedy is available only when the funding recipient engages in intentional conduct that violates the clear terms of the statute.  Id. (citing Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 640-42 (1999)).

The district court looked to M.D.'s Complaint to determine what notice the School Board had of M.D.'s claims of sex discrimination under Title IX.  The only fact alleged with respect to any complaint of sex discrimination is as follows:  "The Plaintiff was also repeatedly called gay; even though he is not gay he was perceived to be based on perceived notions that an intelligent boy who is not aggressive, does not want to fight and have interest beyond the mental capacity of most children does not have the qualities of a normal boy."  JA 5 (¶ 12), JA 15 (¶

26

84).  M.D. also makes the following conclusory statement in Count II, which M.D. captioned "Discrimination Based On Perceived Sexual Orientation:" "The Plaintiff was subjected to constant harassment based on perceived sex and sexual orientation causing him to be subjected to forms of sex discrimination recognized under Title IX from January 2013 to April 2013 when he was routinely called names by other students while attending Summer Hill elementary school because he did not conform to masculine stereotypes and because of his sex."  JA 15 (¶83).

M.D.'s conclusory allegations do not set forth sufficient facts to allege a sex discrimination claim.  Nevertheless, even if they could be deemed to allege a sex discrimination claim, nothing in those allegations establishes that M.D. ever advised anyone at the school that he was being harassed on the basis of sex. Although M.D. alleges the dates on which his mother advised the Assistant Principal and Principal that the Hispanic male was calling him "nigger" and a "little monkey," M.D. never alleged providing any notice to the Principal or Assistant Principal that the Hispanic male was harassing him because of his sex.

Because M.D. never notified anyone at the school that he was being harassed on the basis of his sex, the School Board cannot be liable for sex discrimination under Title IX, and the district court's dismissal of the Title IX claim was proper.

## B.  M.D. FAILED TO ALLEGE FACTS SUFFICIENT TO ESTABLISH THAT THE PRINCIPAL AND ASSISTANT PRINCIPAL WERE "DELIBERATELY INDIFFERENT."

Liability arises from an official decision by the school board not to remedy a violation of Title IX.  Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 642-43 (1999); Gebser v. Lago Vista Independent School Dist., 529 U.S. 290.  By employing the "deliberate indifference" theory already used to establish municipal liability under 42 U.S.C. § 1983, recipients could be liable in damages only where their own deliberate indifference effectively "caused" the discrimination. Id., 524 U.S., at 291; see also Canton v. Harris, 489 U.S. 378, 385 (1989) (recognizing that a municipality will be liable under § 1983 only if the municipality *itself* causes the constitutional violation at issue (emphasis in original));  Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 75 (1992) (holding that a recipient is subject to a private damages action only where the recipient is deliberately indifferent to known acts of discrimination). The high standard imposed in Gebser sought to eliminate any risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions. 524 U.S. at 291.

Liability for the School Board under Title VI is similarly premised upon a showing that school personnel were deliberately indifferent.  Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 666 (2d Cir. 2012)(applying the standard under

<u>Davis v. Monroe County School Board</u> to claims of racial discrimination under Title VI.)

A school board is not deliberately indifferent unless it knows of and disregards an excessive risk to the student's health or safety. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). The school board must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and, further, it must actually draw that inference. <u>See</u> <u>id</u>. Deliberate indifference presupposes that the school knows of a Title IX violation, but it "refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation." <u>Gebser v. Lago Vista Indep. School Dist</u>., 524 U.S. 274, 290 (1998); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Davis</u>, 526 U.S. at 651, 654 (deliberate indifference established when school district knows of peer harassment, but it "refus[es] to take any action" and "ma[kes] no effort whatsoever" to end the harassment).

This standard "does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to [the] abuse." <u>See</u> <u>Doe v. Claiborne County, Tenn</u>., 103 F.3d 495, 508 (6th Cir.1996). The deliberate indifference must, at a minimum, "cause [students] to undergo" harassment or "make them liable or vulnerable" to it. <u>Davis</u>, 526 U.S. 629, 645 (1999).

Notably, the Supreme Court stressed in <u>Davis</u> that it was not holding that the only way that funding recipients can avoid liability is by purging their schools of actionable peer harassment or that administrators must engage in any particular disciplinary action. <u>Id.</u> at 648. In fact, the Supreme Court determined that district courts should refrain from second-guessing the disciplinary decisions made by school administrators, and stated that school administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed "deliberately indifferent" and acknowledged that school administrators shoulder substantial burdens as a result of legal constraints on their disciplinary authority." <u>Id</u>. at 648-49 (citing <u>New Jersey v. T.L.O</u>., 469 U.S. 325, 342 n. 9 (1985)).

Further, the Supreme Court did not impose a requirement that school boards remedy peer harassment or ensure that students conform their conduct to certain rules, stating,

> On the contrary, the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable. This is not a mere "reasonableness" standard. In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not "clearly unreasonable" as a matter of law.

<u>Davis v. Monroe Cnty. Bd. of Educ.</u>, 526 U.S. 629, 648-49 (1999).

Under the facts of this case, M.D. never alleged that he notified the School Board or any school personnel that he was being subjected to sex discrimination.

30

Because M.D. did not notify school personnel of purported sex discrimination, they are not liable for it.

M.D. did allege that he notified Assistant Principal, Raymond Bowser, of the use of derogatory racial terms. M.D. specified the dates on which he provided such notice. According to the Complaint, M.D. specifically notified the Assistant Principal of the racial harassment on March 28, 2013, which was one day prior to the commencement of spring break. At that time, the Assistant Principal was also advised that M.D.'s parents informed the harassing child's parents of his conduct. JA 9-10 (¶ 49). As a result, the child was "hit" by his mother. (Id.) M.D.'s parents did not think that the Assistant Principal, who advised them that he had spoken with the harassing student and who also informed them that he was limited in what disciplinary actions he could take as the Assistant Principal, had done enough. JA 10(¶¶ 50-53).

Specifically, according to the Complaint, Mr. Bowser informed M.D.'s mother that "he could only punish the children within the limits of the authority given to him and that he did so and he could not control the children." JA 6 (¶ 19). In order to be found to be deliberately indifferent, the school personnel must be capable of taking corrective action. See Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257 (2009). M.D. pled that the Assistant Principal advised him that he

had done all that he could do within the limits of his authority, which is what led M.D. to proceed higher up the administrative hierarchy to speak with the Principal.

In evaluating whether the Assistant Principal's conduct shows deliberate indifference, one should consider what information the Assistant Principal had available to him and what actions he took based on that information. Under the facts alleged, at the time that M.D. notified the Assistant Principal of harassment, the only complaint made to the Assistant Principal is that a Hispanic boy called him "nigger" and a "little monkey." JA 7, 9-10 (¶¶ 26, 48-52). Although M.D. alleged in his complaint "stalking, physical assaults, and theft of property," and being called "gay" there are no allegations in the complaint to indicate that those behaviors were ever made known to the Assistant Principal. From the facts alleged, it appears as though the only conduct of which the Assistant Principal was notified was the use of racist language.

Based on the complaints of racist language, the Assistant Principal spoke with the offending student. M.D. acknowledges that the Assistant Principal did speak with the offending student. The Assistant Principal's conduct, as alleged in the Complaint, demonstrates that he was not deliberately indifferent. On the facts pled, the district court was correct in finding that the Assistant Principal was not deliberately indifferent.

32

Although M.D.'s mother did not think that speaking with the student was sufficient and demanded more severe punishment, the Supreme Court has expressly instructed district courts not to second-guess the disciplinary decisions made by school administrators, and stated that school administrators will continue to enjoy the flexibility they require as long as they are not deliberately indifferent. Davis, 526 U.S. at 648-49. The Supreme Court also noted the substantial burdens school administrators carry as a result of legal constraints on their disciplinary authority. Id.

As to the conduct of the Principal, Sheleta Crews, the Complaint again alleges only that she was advised that a Hispanic male had called M.D. "nigger" and a "little monkey." No other allegations of harassment were reported to Ms. Crews. Moreover, the first time that M.D.'s mother spoke with Ms. Crews was on April 10, 2013. JA 7 (¶ 28-30). At that time, Ms. Crews told M.D.'s mother that she would "deal with the issue later that day," but the students were testing. On April 12, 2013, M.D. reported to his mother that the Principal had not spoken with him about his claims of harassment. M.D. also notes, however, that his parents identified the Hispanic male to the principal on April 10, 2013, so there would be no need to speak to M.D. to verify that student's identity. M.D.'s mother then called the school and "verified that [Ms. Crews] had done nothing to investigate the harassment or bullying." JA 8 (¶ 33). April 12, 2013, was a Friday. On

33

Monday, April 15, 2013, M.D.'s mother withdrew him from school.  JA 8 (¶ 34).
M.D. provided Ms. Crews with two business days in which to discipline the
offending student to M.D.'s mother's standards, and when that was not done to her
satisfaction, M.D.'s mother withdrew him from school, which did not provide Ms.
Crews with an opportunity to take action to remedy the alleged conduct.

M.D.'s mother also complains that from March 29, 2013, through April 12,
2013, the School Board Administrative office did not return her calls.  JA 12 (¶¶
69-70).  The school system was on spring break from March 29, 2013, through
April 8, 2013.  See JA (¶¶ 55-56).

On April 17, 2013, M.D.'s mother spoke with the School Board's bullying
specialist, and by April 29, 2013, the School Board's office of pupil placement had
transferred M.D. into a different elementary school, where he is thriving.  JA 8 (¶¶
34, 39); see JA 20(M.D. sought an order from the district court requiring the
School Board to keep M.D. at the new elementary school as "it is in his best
interest.").  Even after M.D. withdrew from the Richmond City schools, the School
Board continued to work with M.D. and his mother in order to completely remedy
his complaints and return him to the Richmond City school system.

The allegations of the Complaint are insufficient as a matter of law to
demonstrate that the actions taken by the School Board demonstrate deliberate
indifference to M.D.'s claims of discrimination under either Title IX or Title VI.

34

As alleged, Assistant Principal Bowser did all that he could within his authority, so M.D.'s parents went to the Principal, who was given only two days to remedy M.D.'s allegations of racial slurs to M.D.'s mother's satisfaction.  Then M.D. withdrew from the school, preventing the Principal from taking any action.  The actions of those two school administrators cannot be said to be deliberately indifferent.  Because the school personnel did not display deliberate indifference, the district court's dismissal of the Title IX claim was proper and should be affirmed.

### C.    M.D. FAILED TO ALLEGE FACTS TO ESTABLISH THAT THE SCHOOL BOARD OR INDIVIDUAL DEFENDANTS VIOLATED TITLE VI.

Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin.  See 42 U.S.C. § 2000d.  Public educational institutions that receive federal funds are subject to this mandate. 34 C.F.R. § 100.13(i) (2000).  For a claim of Title VI discrimination to be actionable, the harassment must be "severe, pervasive, and objectively offensive" and discriminatory in effect. Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 664 (2d Cir. 2012) (quoting Davis, 526 U.S. at 650–51).

Also, "only deliberate indifference to [student-on-student] harassment can be viewed as discrimination by school officials themselves." Davis, 526 U.S. at 643–44. The school's action—or inaction—must, "at a minimum, cause students to

35

undergo harassment or make them liable to or vulnerable to it." <u>Davis</u>, 526 U.S. at 645 (internal quotation and alteration omitted).

A school district's actions are only deliberately indifferent if they were "clearly unreasonable in light of the known circumstances." <u>Zeno</u>, 702 F.3d at 666; <u>Davis</u>, 526 U.S. at 648. Thus, when weighing the adequacy of a response, a court must accord sufficient deference to the decisions of school disciplinarians. <u>See</u> <u>Davis</u>, 526 U.S. at 648 ("[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators." (citation omitted)). To that end, victims do not have a right to specific remedial measures. <u>See</u> <u>Davis,</u> 526 U.S. at 648.

For the reasons set forth above related to M.D.'s failure to allege that the conduct alleged was severe, pervasive, and objectively offensive[5] and for his failure to allege facts that show that the school administration's response was clearly unreasonable or otherwise deliberately indifferent given the information made available to them, the district court properly dismissed the Title VI claims.

_____

[5] While the School Board, Sheleta Crews, and Raymond Bowser do not dispute that the terms "nigger" and "little monkey" when used against an African American are offensive, the conduct at issue – the verbal name calling – as alleged do not establish a claim of severe and pervasive harassment that systemically denies a child the benefit of an education under Title VI.

36

### D.    TITLE VI AND TITLE IX DO NOT PROVIDE FOR PRIVATE RIGHTS OF ACTION AGAINST THE SCHOOL BOARD'S EMPLOYEES.

The district court properly dismissed the claim against Principal Sheleta Crews and Assistant Principal Raymond Bowser as neither Title VI nor Title IX provides a private right of action against individual School Board employees.

Title IX does not authorize a cause of action against individuals; rather, it creates a right enforceable against educational institutions only. See Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246 (2009)(Title IX reaches institutions and programs that receive federal funds ... but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.); Davis v. Monroe County Bd. of Educ., 526 U.S. at 640-41 (The Government's enforcement power may only be exercised against the funding recipient ... and we have not extended damages liability under Title IX to parties outside the scope of this power.)

There is no private right of action to enforce the regulations prohibiting practices with a discriminatory effect on the basis of race or ethnicity under Title VI of the Civil Rights Act of 1964.  See Alexander v. Sandoval, 532 U.S. 275, 279 (2001).

Because there is no authority under which the Principal or Assistant Principal may be sued under Title VI or Title IX, the district court's dismissal of

37

M.D.'s claims against Sheleta Crews and Raymond Bowser was appropriate and should be affirmed.

## IV. M.D. DID NOT PLEAD A CAUSE OF ACTION UNDER THE FOURTEENTH AMENDMENT, AND THE DISTRICT COURT CORRECTLY DID NOT PLEAD THOSE CAUSES OF ACTION FOR HIM.

M.D. alleges that the district court erred in not finding that he had not alleged violations of the Fourteenth Amendment and 42 U.S.C. § 1983 in his Complaint, even though, as M.D. admits in his opening brief, he did not plead those claims. Br. of Appellant, 49. The mandated liberal construction afforded to *pro se* pleadings does not require a district court to rewrite a complaint to include claims that were never presented. Rice v. Nat'l Sec. Council, 244 F. Supp. 2d 594, 596 (D.S.C. 2001) aff'd sub nom. Rice v. Mills, 46 F. App'x 212 (4th Cir. 2002)(citing Barnett v. Hargett, 174 F.3d 1128 (10th Cir.1999)). A court may not construct the plaintiff's legal arguments for him. Small v. Endicott, 998 F.2d 411 (7th Cir.1993); Brown v. Matauszak, 415 Fed. App'x 608, 613 (6th Cir.2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks omitted); Payne v. Sec'y of Treas., 73 Fed. App'x 836, 837 (6th Cir.2003)(affirming *sua sponte* dismissal of complaint, stating, "[n]either this court nor the district court is required to create Payne's claim for her").

Appellate courts have repeatedly declined to require district courts to plead causes of action on behalf of *pro se* litigants or to "ferret out the strongest cause of

action on behalf of *pro se* litigants." See, e.g. Young Bok Song v. Gipson, 423 Fed. App'x 506, 510 (6th Cir.2011). "Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before them, that responsibility does not encompass advising litigants as to what legal theories they should pursue." Id.

In interpreting a *pro se* complaint, the district court's task is not to discern the unexpressed intent of plaintiff, but what the words in the complaint mean. Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006). No equal protection claim was pled by M.D. in this case, and the district court had no duty to rewrite his Complaint to include claims that were never presented.

## A. M.D. DID NOT PLEAD A VIOLATION OF THE FOURTEENTH AMENDMENT UNDER 42 U.S.C. § 1983.

A section 1983 plaintiff bears the burden of pleading and proving two essential elements: (1) conduct that deprived the plaintiff of a right, privilege, or immunity protected by the Constitution or laws of the United States; and (2) the alleged deprivation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Johnson v. Knowles, 113 F.3d 1114, 1119 (9th Cir.), cert. denied, 522 U.S. 996 (1997).

Section 1983 does not itself create substantive rights or impose obligations on government officials. Rather, the statute provides a cause of action by which

39

persons may seek relief for governmental violations of the United States Constitution or federal law. Albright v. Oliver, 510 U.S. 266, 271 (1994); Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d 1052 (D.N.M. 2010)(Section 1983 creates only the right of action, but does not create any substantive rights; substantive rights must come from the Constitution or other federal statute); see Spielman v. Hildebrand, 873 F.2d 1377, 1386 (10th Cir.1989)(Section 1983 does not provide a remedy if federal law does not create enforceable rights).

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Harrison v. Prince William Cnty. Police Dep't, 640 F. Supp. 2d 688, 706 (E.D. Va. 2009)(quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir.2001)).

To state an equal protection claim under the Fourteenth Amendment, a plaintiff first must show that he "has been intentionally treated differently from others similarly situated ...." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Silveira v. Lockyer, 312 F.3d 1052, 1087–1088 (9th Cir.2002), cert. denied, 540 U.S. 1046 (2003). "Similarly situated" persons are those "who are in

40

all relevant respects alike." <u>Silveira</u>, 312 F.3d at 1088 (quoting <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10 (1992)).

To establish an equal protection claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001); <u>DeBlasio v. Johnson</u>, 128 F. Supp. 2d 315, 327 (E.D. Va. 2000) <u>aff'd</u> <u>sub</u> <u>nom</u>. <u>Madison v. Johnson</u>, 12 F. App'x 149 (4th Cir. 2001). Proof of discriminatory intent is required to establish a violation of the Equal Protection Clause. <u>See</u> <u>Shaw v. Martin</u>, 733 F.2d 304 (4th Cir.1984). Mere conclusory allegations of discrimination are insufficient, as are mere conclusory allegations of disparities. <u>See</u> <u>Chapman v. Reynolds</u>, 378 F.Supp. 1137, 1139–40 (W.D. Va. 1974).

In a claim under the Equal Protection Clause, the burden is upon the private plaintiffs to show discriminatory purpose and effect. <u>United States v. Charleston Cnty.</u>, 316 F. Supp. 2d 268, 305 (D.S.C. 2003) aff'd sub nom. <u>United States v. Charleston Cnty., S.C.</u>, 365 F.3d 341 (4th Cir. 2004). "Discriminatory purpose" implies more than "intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of' ... its adverse effects upon an identifiable group." <u>McCleskey v. Kemp</u>, 481 U.S. 279, 298 (1987); <u>see also</u> <u>Village of Arlington Heights v. Metro.</u>

41

Hous. Dev. Corp., 429 U.S. 252, 265 (1977)(To prevail on a § 1983 claim of race discrimination in violation of equal protection, the law requires a plaintiff to prove the defendant's underlying "racially discriminatory intent or purpose.")

M.D. alleges that the underlying discriminatory intent or purpose is satisfied here on the allegation of deliberate indifference. However, M.D. fails to aver sufficient facts to demonstrate that the individual defendants or the School Board were deliberately indifferent to the racist conduct of the Hispanic male for all of the reasons asserted above. Moreover, as the defendants were not notified of the purported sex discrimination by the Hispanic male, the individual defendants and the School Board were not deliberately indifferent to the purported sex discrimination.

The use of racial epithets, by itself does not implicate constitutional rights, and on its own, cannot form the basis of a constitutional claim. Harrison v. Prince William Cnty. Police Dep't, 640 F. Supp. 2d 688, 706 (E.D. Va. 2009); Canada v. Booth, 2008 WL 1969499, at *8 (W.D. Va. May 6, 2008) ("plaintiff's allegation that [defendant] directed racial slurs towards him during the ... incident is insufficient to state a constitutional violation"). Under the holdings of the cases *supra*, even if Bowser and Crews had themselves used racial epithets toward M.D., the use of that language alone would not have triggered a violation of M.D.'s constitutional rights.

42

Bowser and Crews are not accused of using racial epithets against M.D.; however, they are accused of being deliberately indifferent toward a student's use of racial epithets against M.D., which places them one step further away from the conduct that courts in this Circuit have declared does not violate the Constitution.

The allegations in the Complaint do not support a claim that Bowser, Crews, and the School Board were deliberately indifferent to claims of either sex discrimination or race discrimination. This Court has held that "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." Baynard v. Malone, 268 F.3d 228, 236 (4th Cir. 2001)(quoting Grayson v. Peed, 195 F.3d 692, 695 (4th Cir.1999), cert. denied, 529 U.S. 1067, (2000); see Farmer v. Brennan, 511 U.S. 825, 835 (1994) (explaining that "deliberate indifference describes a state of mind more blameworthy than negligence" but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result"). Actions that in hindsight are "unfortunate" or even "imprudent" will not suffice. Jones v. Wellham, 104 F.3d 620, 627 (4th Cir.1997).

As alleged by M.D., Assistant Principal Bowser performed what corrective actions he could within the limits of his authority. Principal Crews was given two days to correct the offending student's conduct before M.D. withdrew from school. Once M.D. withdrew from school, the School Board's bullying specialist and pupil

43

placement officer worked together with M.D. to relocate him to another elementary school within the school district, and M.D. is now located at an elementary school that is "in his best interest."  JA 20.

Because M.D. did not allege that he was a member of a protected class as to his sex discrimination claims, and because M.D. did not allege facts sufficient to establish deliberate indifference against Bowser and Raymond, he did not allege a prima facie cause of action for a violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983.

## CONCLUSION

The appropriate inquiry for the Court of Appeals under the facts of this case is not whether the protections of Title IX should be enlarged to include allegations of purported harassment on the basis of sexual orientation, but rather, whether the district court erred in dismissing M.D.'s fatally flawed Complaint under 28 U.S.C. § 1915(e)(2)(B)(ii).

Title IX does not provide protections against discrimination on the basis of sexual orientation or perceived sexual orientation.  Because M.D. sought redress for claims of harassment based upon perceived sexual orientation, which are not actionable under Title IX, the district court properly and appropriately dismissed M.D.'s claims under Title IX, and the decision of the district court on this issue should be affirmed.

To the extent that this Court determines that M.D.'s Complaint raised issues of discrimination on the basis of sex stereotypes, then the district court's dismissal of M.D.'s claims under Title IX should likewise be affirmed because M.D.'s complaint failed to allege severe, pervasive, and objectively offensive discrimination sufficient to establish a cause of action under Title IX and failed to allege that school personnel were on notice of his sex discrimination claims. Moreover, the facts alleged by M.D. demonstrate that the conduct of the School Board was not deliberately indifferent to his claims.

Analysis of Title VI violations follow the same standard as Title IX claims, and under the detailed facts alleged by M.D., the alleged harassing conduct of the Hispanic student was not pervasive and severe. Moreover, even if the Court determines that the Hispanic student's use of racial epithets constituted pervasive and severe discrimination, the School Board is not liable for a Title VI violation as the Principal's, Assistant Principal's, and School Board's conduct in redressing the discrimination did not demonstrate deliberate indifference.

Title IX and Title VI do not provide a private cause of action against the principal or vice principal of the school, and therefore, the district court's dismissal of the Complaint as to Sheleta Crews and Raymond Bowser should be affirmed.

The claims in M.D.'s Complaint cannot be stretched so far as to include a cause of action under the equal protection clause of the Fourteenth Amendment.

45

M.D. admits that he did not plead those claims, a review of the applicable standards for those claims demonstrates that they would have failed even if M.D. had pled them, and it is not incumbent upon federal judges to draft pleadings for *pro se* plaintiffs. The district court did not, therefore, err in failing to plead an equal protection claim for M.D.

M.D. filed a fatally flawed Complaint, and then moved to proceed *in forma pauperis*, which rightfully permitted the district court to review the pleadings to determine whether they could survive a motion to dismiss for failure to state a claim. M.D.'s Complaint failed to state a claim upon which relief may be granted, and the district court's dismissal of the Complaint should be affirmed in its entirety.

## REQUEST FOR ORAL ARGUMENT

Appellees respectfully request an opportunity for oral argument.

DATED: October 7, 2013                    By:    _____*/s/  Jim H. Guynn, Jr.*_____
                                                 Jim H. Guynn, Jr.
                                                 Counsel for Appellees

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Rules of Federal Appellate Procedure because this brief contains <u>11,035</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) of the Rules of Federal Appellate Procedure and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word in 14 point Times New Roman font.</u>

DATED:  October 7, 2013            By:    _____*/s/  Jim H. Guynn, Jr.*_____
                                                      Jim H. Guynn, Jr.

## CERTIFICATE OF SERVICE

I certify that on October 7, 2013 the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

DATED:  October 7, 2013          By:     <u>*/s/  Jim H. Guynn, Jr.*        </u>
                                           Jim H. Guynn, Jr.